UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUONSHAY DOUGLAS-RICARDO MASON,

Petitioner,

CASE NO. 14-10566
v.                                            HON. NANCY G. EDMUNDS

DEWAYNE BURTON,

Respondent.
_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
GRANTING IN PART A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Quonshay Douglas-Ricardo Mason ("Mason") has filed a *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Mason's convictions for first-degree (premeditated) murder, Mich. Comp. Laws § 750.316(1)(a), conspiracy to commit murder, Mich. Comp. Laws § 750.157a, assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b. Mason claims that (1) the prosecutor failed to produce a laboratory analysis, and he has newly discovered evidence of a second laboratory analysis, (2) the evidence was insufficient to support his murder and conspiracy convictions, (3) he was denied a fair trial by a witness who was not qualified to testify as an expert, (4) the trial judge's intemperate and unjust conduct deprived him of a fair trial, (5) the prosecutor's conduct was improper, and (6) appellate counsel was ineffective for failing to raise all of these

claims on direct appeal.  The State urges the Court through counsel to deny the petition.

Having reviewed the record, the Court agrees that none of Mason's claims warrant

habeas corpus relief.  Accordingly, the petition will be denied.

## I.  Background

The charges against Mason arose from the shooting of Bennie Peterson

("Peterson") and Donteau Dennis ("Dennis") in Detroit, Michigan on September 28,

2007.   Mason was tried jointly with co-defendants Andre Jackson ("Jackson") and

Kainte Hickey ("Hickey") before a single jury in Wayne County Circuit Court.   The state

court provided the following summary of the testimony:

> Dennis was the primary prosecution witness at trial.  Dennis testified that
> he was at the home of Bennie Peterson when defendant Mason came to
> the house and invited them to participate in a planned robbery of a drug
> purchaser at the Cabana Hotel.   Mason told them that the purchaser
> would be carrying a large sum of money.  Peterson and Dennis agreed to
> go, and they left with Mason in Peterson's van, with Mason driving.
> Codefendant Jackson followed them in a Jeep.   According to Dennis,
> Jackson positioned himself in the Jeep to prevent Dennis from seeing
> another                  occupant               in          the                   Jeep.
>
> Instead of driving to the hotel, Mason drove to Malcolm Street, where he
> instructed Dennis to purchase drugs from a drug house; informing him that
> the drugs would be used as bait in the planned robbery.  As Dennis began
> walking toward the drug house, he noticed that Mason and Jackson had
> positioned their vehicles so that Peterson's van was trapped between the
> Jeep and another parked car.    Hickey then approached Dennis,
> apparently having come from Jackson's Jeep.  Dennis owed a $50 drug
> debt to Hickey, who shot Dennis.   During this same time, Dennis saw
> Mason and Jackson exit their vehicles carrying guns, and one or both of
> them fired into the van. Peterson died from multiple gunshot wounds.
> Dennis was shot several times, but fled to the backyard of a home nearby
> and                                                                        survived.
>
> Detroit Police Officer Frank Senter found Dennis lying in the backyard of
> that home.  Dennis told Senter that Hickey had shot him over a drug debt,
> but did not say anything about Peterson, Mason, or Jackson.  Over the
> next few days, Sergeant William Anderson interviewed Dennis at the

hospital.  Dennis reiterated that he was shot by Hickey, and also reported that Mason and Jackson had killed Peterson.

*People v. Mason*, No. 285254, 2011 WL 801034, at *1 (Mich. Ct. App. Mar. 8, 2011).[1]

Neither Mason, nor his two co-defendants, testified or presented any witnesses. Mason's defense was that, even if one believed Dennis's version of the facts, there were reasons to doubt Dennis because Mason, Peterson, and Dennis were friends, and Mason had no motive for shooting Peterson.  Defense counsel also argued to the jury that Mason had no opportunity to plan the murder with somebody else, that he did not conspire to murder his friend, and that Dennis could have been mistaken about what he perceived.

The trial court instructed the jury on second-degree murder as a lesser offense of first-degree murder, but on March 25, 2008, the jury found Mason guilty, as charged, of first-degree murder, conspiracy to commit murder, assault with intent to commit murder, and felony firearm.[2]  The trial court sentenced Mason to two years in prison for the felony firearm conviction, followed by concurrent terms of life imprisonment for the murder and conspiracy convictions and 285 months to fifty years in prison for the assault conviction.  On direct appeal from his convictions, Mason argued through counsel that:  (1) the trial court violated his right to a fair trial and his right to present a

---

[1]  The record indicates that Peterson was shot one time, not multiple times, as the state court mentioned in its summary of the facts.  *See* 3/20/08 Trial Tr. at 150, 157, 160, ECF No. 7-6, Pg ID 573, 579, 582.  The remainder of the state court's summary of the facts is accurate.

[2]  Co-defendants Jackson and Hickey similarly were convicted of first-degree murder, conspiracy to commit murder, assault with intent to commit murder, and felony firearm. Hickey was convicted of an additional count charging him with being a felon in possession of a firearm.

defense by instructing the jury to disregard information that Dennis was a robber; and (2) the trial court erred by allowing the prosecutor to elicit testimony that Dennis had never been convicted of a robbery.  In a *pro se* supplemental brief, Mason argued that: (1) there was insufficient evidence at trial that he shared his co-defendants' intent and conspired with them; (2) defense counsel was ineffective for failing to investigate witnesses and present a proper defense; and (3) defense counsel denied him the right to testify.

The Michigan Court of Appeals consolidated Mason's appeal with Hickey's appeal, but at Mason's request, the Court of Appeals remanded his case to the trial court so that Mason could file a motion for new trial on his claims about trial counsel. On remand, the trial court held an evidentiary hearing and denied Petitioner's motion for new trial.  The Michigan Court of Appeals subsequently affirmed Mason's (and Hickey's) convictions in an unpublished, *per curiam* opinion.  *See Mason*, 2011 WL 801034.  On July 25, 2011, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it.  *See People v. Mason*, 800 N.W.2d 88 (Mich. 2011).

On February 8, 2012, Mason filed a motion for relief from judgment in which he raised his habeas claims.  The trial court denied the motion, and on November 30, 2012, the Michigan Court of Appeals denied leave to appeal on the ground that Mason failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Mason*, No. 310392 (Mich. Ct. App. Nov. 30, 2012).  On September 3, 3013, the

4

Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Mason*, 835 N.W.2d 582 (Mich. 2013).

Finally, on February 7, 2014, Mason filed his habeas corpus petition. The State urges the Court to deny the habeas petition on grounds that some of Mason's claims are procedurally defaulted, other claims are not cognizable on habeas review, and the state-court decisions were not contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. To the extent any of Mason's claims are procedurally defaulted, the Court excuses the default because Mason's claims do not warrant habeas relief, and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003). The Court proceeds to analyze Mason's claims, using the following standard of review.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

6

### III.  Discussion

**A.  Newly Discovered Evidence**

Mason alleges that the state prosecutor deprived him of due process by failing to produce the Detroit Police Department's 2007 report on the ballistics evidence.  Mason was tried in 2008, and he asserts that he was unaware of the 2007 ballistics report until 2011 when he discovered that the Michigan State Police crime lab had re-examined the ballistics evidence.

The 2007 and 2011 reports mention only items pertaining to a .45 caliber weapon.  Mason contends that the 2007 report was essential to impeaching Dennis's testimony that Mason used Peterson's .32 caliber pistol to murder Peterson.  Mason also contends that he is entitled to a new trial because the newly discovered 2011 report proves that only one weapon was fired at the scene, that he did not fire a .32 caliber weapon, and that he was not at the crime scene.

Mason first raised this claim in his motion for relief from judgment.  The trial court's successor rejected the claim, stating that:

> [t]he defendant's position that the results from the ballistics test exonerate him or support his defense is misdirected.  The updated ballistics test was done as a formality due to historical negligence or breach of fiduciary duty of certain technicians that came out prior to the closing of the Detroit Crime Lab.  However, not all cases done prior to the closing of the lab were tainted with both, and defendant's case was found to have been properly tested.  Thus, his 2011 case was re-closed as being consistent with the prior results found in 2007.  So, although the reconfirming ballistics test may be in a narrow sense, considered "new evidence", it is not, as the results are the same as in 2007. . . .
>
>     . . . .
>
> [A]s defendant establishes neither innocence nor displays evidence that preponderates heavily against the verdict, his argument must fail.

7

Opinion at 5-6 (Wayne Cty. Cir. Ct. May 2, 2012).

### 1. The *Brady* Claim

In his habeas petition, Mason relies on *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. There are three components to a true *Brady* claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

It is unclear from the record before the Court whether the prosecution actually withheld the 2007 ballistics report from the defense attorneys. Mason, in fact, concedes that he does not know whether defense counsel was given a copy of the 2007 ballistics report. *See* Memorandum of Law in Support of Pet. for Writ of Habeas Corpus, ECF No. 1, at 14, Pg ID 16. Because the possibility exists that the prosecutor did provide the ballistics report to defense counsel, Mason has failed to satisfy the second element of a *Brady* claim.

Even if the prosecution withheld the 2007 ballistics report, Mason has failed to establish the third element of a *Brady* claim: that he was prejudiced by suppression of the report. The report refers to three bullet fragments, three lead cores, one .45 caliber bullet, one .45 bullet fragment, and eight .45 caliber casings. An analysis of these items

8

revealed that all the fired evidence came from the same weapon.  *See* Pet. for Writ of Habeas Corpus, Ex. B, ECF No. 1, Pg ID 87-89.)  Although Mason claims that the 2007 ballistics report would have been exculpatory evidence, there was testimony at trial that the police found only .45 caliber casings at the crime scene and no .32 caliber casings. (3/24/08 Trial Tr. at 9, 41, ECF No. 7-7, Pg ID 619, 651.)

The prosecutor's theory, moreover, was that all three defendants were one hundred percent responsible for the death of Peterson and the assault on Dennis because they were working together.  The prosecutor surmised that Mason's role was to get Peterson and Dennis out of the house, that Jackson fired the .45 caliber weapon at Peterson, and that Hickey's role was to pursue Dennis.  Consequently, in the prosecutor's opinion, the caliber of the casings found near Peterson's van was inconsequential.  (3/24/08 Trial Tr. at 108-11, ECF No. 7-7, Pg ID 718-21.)

Given the prosecutor's theory – that all the defendants were guilty either as principals or as aiders and abettors, regardless of who fired a gun – and the fact that the jury was made aware that only evidence from a .45 caliber weapon was found, the 2007 ballistics report would not have made a difference in the outcome of the trial.  For this additional reason, Mason has failed to allege a true *Brady* claim.

## 2. Actual Innocence

To the extent Mason claims that the 2011 ballistics report is newly discovered evidence of actual innocence, his claim lacks merit, because the 2011 report merely confirms the findings in the 2007 report that the fired evidence came from the same

weapon.  And, as noted above, the jury was informed that the ballistics evidence came from only one gun and that the gun probably was not the one Mason possessed.

Furthermore, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  Because Mason has not established that an independent constitutional violation occurred in his state criminal case, his claim of innocence is not cognizable on habeas review.

To conclude, Mason's actual-innocence claim lacks merit, and he has not established all the elements of a true *Brady* claim.  The Court therefore denies relief on Mason's first claim.

## B.  Sufficiency of the Evidence

Mason asserts that the evidence at trial was insufficient to support his convictions for premeditated murder and conspiracy to commit murder.  Mason points out that he, Peterson, and Dennis were friends and that, according to Frank Senter, the first police officer to speak with Dennis after the shootings, Dennis said nothing about Mason in his statement to Officer Senter.  (3/20/08 Trial Tr. at 170-71, ECF No. 7-6, Pg ID 592.) Mason contends that the prosecutor merely speculated that he conspired to murder Peterson and premeditated and deliberated the murder.  Mason also claims there was no indication that he knew Hickey would be on Malcolm Street where the shooting occurred or that he (Mason) actually shot a gun.

### 1.  Legal Framework

10

The relevant question on review of a challenge to the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ———, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (*per curiam*).

The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Mason challenges his murder conviction on the basis that there was no evidence of premeditation and deliberation. "To establish first-degree premeditated murder, the prosecution must prove that the defendant intentionally killed the victim and the act of killing was deliberate and premeditated." *People v. Haywood*, 530 N.W.2d 497 (Mich. Ct. App. 1995).

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Morrin*, 187 N.W.2d 434, 449 (Mich. Ct. App. 1971) (internal and end footnotes omitted). "[P]remeditation and deliberation may be inferred from all the facts and circumstances surrounding the incident, including the parties' prior relationship, the actions of the accused both before and after the crime, and the circumstances of the killing itself." *Haywood*, 530 N.W.2d at 503 (internal and end citations omitted).

Mason also challenges his conspiracy conviction. Criminal conspiracy in Michigan

> is a mutual understanding or agreement between two or more persons, expressed or implied, to do or accomplish some criminal or unlawful act.
>
> . . . . All the requisite elements of the crime of conspiracy are met when the parties enter into the mutual agreement, and no overt acts necessarily must be established. . . .
>
> . . . . To prove a conspiracy to commit murder, it must be established that each of the conspirators [had] the intent required for murder and, to establish that intent, there must be foreknowledge of that intent.

*People v. Hamp*, 312 N.W.2d 175, 180 (Mich. Ct. App. 1981) (internal citations omitted).

**2. Application**

The Michigan Court of Appeals pointed out on direct review that

> the evidence at trial supported an inference that Jackson, Mason, and Hickey were acting in concert pursuant to a common plan to entice Peterson and Dennis away from Peterson's home to a location where they would be killed. The evidence showed that Mason drove Dennis and Peterson in one vehicle, and that Jackson followed them in a separate vehicle, accompanied by Hickey. When they arrived at Malcolm Street, Mason [repeatedly] asked Peterson for the gun he was carrying . . . , and Peterson ultimately complied. Mason and Jackson parked in a manner that prevented Peterson from driving away in the vehicle he was occupying. After Dennis left the vehicle Mason was driving, Hickey exited

12

> Jackson's vehicle and shot Dennis.   Meanwhile, Mason and Jackson exited their respective vehicles and shot Peterson, who was still inside Mason's vehicle.

*Mason*, 2011 WL 801034, at *11.

A rational trier of fact could have concluded from this evidence that Mason premeditated and deliberated the shooting and that he also conspired with Jackson and Hickey to shoot Peterson and to assault Dennis.   Even if Mason did not fire a single gunshot, he was guilty on an aiding and abetting theory[3] because he aroused the victims from sleep and lured them away from home on a fictitious plan to commit a robbery.   He subsequently convinced Dennis to leave the van, and he persuaded Peterson to hand over his gun to Mason, leaving Peterson defenseless.

Although the critical evidence against Mason came from Dennis, and the defense attorneys claimed that Dennis was mistaken or not credible, "[u]nsupported eyewitness testimony, if believed by the trier of fact, is sufficient to convict." *People v. Richards*, 256 N.W.2d 793, 795 (Mich. Ct. App. 1977).   Furthermore, "[a]n assessment of the

---

[3]  In Michigan,

> "[a]iding and abetting" describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime. . . .   To support a finding that a defendant aided and abetted a crime, the prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.   An aider and abettor's state of mind may be inferred from all the facts and circumstances.

*People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999) (quoting *People v. Turner*, 540 N.W.2d 728, 733-34 (Mich. Ct. App. 1995)).

13

credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthew v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (internal citation omitted).

The evidence in this case, when taken in the light most favorable to the prosecution, was sufficient to support the jury's verdict on the murder and conspiracy counts.  And because the state appellate court's reasonable decision is entitled to deference, the declines to grant relief on Mason's challenge to the sufficiency of the evidence.

## C. The Expert Witness

Mason claims next that he was denied a fair trial by the admission of testimony from Thomas Smith, an evidence technician for the Detroit Police Department.  Smith testified that a bullet appeared to have broken the glass on the driver's side of Peterson's van.  (3/24/08 Trial Tr. at 11, ECF No. 7-7, Pg ID 621.)  Mason claims that this testimony was an opinion on what happened and that Smith was not qualified to give an opinion because (1) the defense attorneys were not allowed to *voir dire* Smith concerning his training and qualifications or the facts on which he based his opinion and (2) the jury was not informed of Smith's qualifications to testify as an expert.

Mason raised this claim in his motion for relief from judgment, but the trial court found no merit in the argument because

> MRE 703 allows experts to testify unrestricted in the discretion of the court subject to the condition that the factual bases of the opinion be admitted in evidence thereafter.  Moreover, if a witness is not an expert, he or she

14

may still provide opinion testimony as long [as] it does not lead to pure speculation.[4]

Opinion at 7 (Wayne Cty. Cir. Ct. May 2, 2012) (footnote in original as note 4).

Although Mason couches his habeas claim in due process terms, it is really an evidentiary claim regarding the state trial court's application of Michigan Rules of Evidence 702, 703, and 705, which govern the admission of expert testimony in Michigan trials. "To the extent that any testimony and comments violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review," *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009), because "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

The Court acknowledges that a state court's evidentiary error can warrant habeas corpus relief if "the error render[ed] the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69-70). In this case, however, counsel for Hickey objected to Smith's testimony about the bullet breaking the glass in the van, and the trial court sustained the objection on the basis that the testimony was speculative. (3/24/08 Trial Tr. at 11, ECF No. 707, Pg ID 621.) Furthermore, the fact that a bullet may have broken the glass on the driver's side of the van was not a disputed fact at trial. Mason's attorney, in fact, did not bother to cross-

---

[4] MRE 701.

15

examine Smith.  Therefore, to the extent an evidentiary error occurred, it did not render Mason's trial fundamentally unfair. Habeas relief is not warranted on Mason's evidentiary claim.

## D.  The Trial Court

Mason argues next that the trial court's intemperate and unjust conduct pierced the veil of impartiality and deprived him of a fair trial and due process of law.  More specifically, Mason contends that the trial court's interruptions and interference with cross-examination were uncalled for and demonstrated to the jury that the judge was not neutral and fair.  Mason also points out that the trial court instructed the jury to disregard comments that Dennis was a robber and, at one point, the trial court refused to allow the defense attorneys to approach the bench to discuss a violation of discovery. Additionally, Mason contends that the trial court made one-sided rulings in favor of the prosecution.  Mason estimates that the trial court sustained the prosecutor's objections at least nineteen times, but sustained defense counsel's objections only three times, and the court overruled defense objections at least sixteen times, but overruled the prosecutor's objections only two times.

### 1.  The State Courts' Rulings

Mason raised a portion of his claim on direct appeal.  He argued there, as he does here, that the trial court violated his right to a fair trial by instructing the jury to disregard information that Dennis was a robber.  The Michigan Court of Appeals agreed that it was improper for the trial court to instruct the jury that Dennis did not intend a robbery on the day of the offense, because Dennis actually admitted on direct

examination that he intended to commit a robbery with Mason.  The Court of Appeals nevertheless determined that the trial court's improper comment and instruction did not pierce the veil of judicial impartiality or affect the defendants' substantial rights.  The Court of Appeals noted that the instruction was not an effort to influence the jury against the defendants or to demonstrate partiality for Dennis, but to address a defense attorney's characterization of Dennis as a robber.

Petitioner expanded on his claim about the trial court when he moved for relief from judgment.  The trial court, however, stated that the claim was "wholly without merit" because Petitioner previously raised his claim in a prior appeal or motion and was collaterally attacking a prior ruling.

### 2.  Clearly Established Federal Law

Defendants in criminal cases have the right to an impartial judge no matter what the evidence against the defendant was.  *Tumey v. Ohio*, 273 U.S. 510, 535 (1927). The right to an impartial adjudicator, be it judge or jury, is a right so basic to a fair trial that its infraction can never be treated as harmless error.  *Gray v. Mississippi*, 481 U.S. 648, 668 (1987) (citing *Chapman v. California*, 386 U.S. 18, 23 n. 8 (1967)).  "Judicial misconduct is found where the judge's remarks clearly indicate a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case, or an alignment on the part of the Court with one of the parties, or where the judge . . . abandons his proper role and assumes the role of an advocate."  *United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006) (citations, brackets, and quotation marks omitted).

17

Although Mason was entitled to a judge "with no actual bias against [him] or interest in the outcome of his particular case," *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997), courts ordinarily "presume that public officials have 'properly discharged their official duties.' " *Id.* at 909 (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926)). To prevail on a claim of judicial bias, a habeas petitioner must show "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964).

> In collateral proceedings, the test is "whether the errors alleged ... could have rendered [the] trial fundamentally unfair." *Buckelew v. United States*, 575 F.2d 515, 518 (5th Cir. 1978). To violate a defendant's right to a fair trial, "a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree." *Daye v. Attorney General of New York*, 712 F.2d 1566, 1572 (2d Cir. 1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

*McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985)

### 3. Application

While it is true that the trial court overruled most of the defense attorneys' objections and sustained most of the prosecutor's objections, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Additionally,

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are

18

> critical or disapproving of, or even hostile to, counsel, the parties, or their
> cases, ordinarily do not support a bias or partiality challenge.

*Id.*

For the most part, the trial court considered the parties' arguments and then made its rulings on the basis of its understanding of the law. The court may have impatient and annoyed at times, but "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality. *Id.* at 555-56. "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune" from a claim of bias or impartiality. *Id.* at 556.

Furthermore, at the conclusion of the case, the trial court charged the jurors to decide the case on the basis of the evidence, which included the sworn testimony of witnesses and the exhibits. (3/25/08 Trial Tr. at 10-12, ECF No. 7-8, Pg ID 795-97.) The trial court also instructed the jurors that, although the attorneys were advocates, the court was not an advocate. The court then explained:

> I don't have a side. What I do during the trial is mak[e] rulings on the evidence.
>
> There are things which are admissible and things which are not admissible. So, when there is an objection, the court has to determine whether or not the question that was asked called for a conclusion and the court will sustain an objection because only the jury can draw conclusions. Or there might be something that might be relevant to the issue that you have to decide. And that will exclude something that is not relevant because the purposes of the rules of evidence is to keep the jury focused on the issue that you are to decide and won't be sidetracked by something that is a non-issue or something that is collateral.
>
> However, when the court is ruling, the court is ruling according to the law, the rules of evidence. I am not making a ruling on the facts because decisions on the facts are what the jury decides. Now, remember that you

> are fact finders when you go and you look at all of the facts that have been brought out and things that are relevant to the case that the court has permitted and you make a decision based on the facts.

(3/25/08 Trial Tr., at 3-4, ECF No. 7-8, Pg ID 788-89.)

These instructions let the jurors know that the trial court's role was to make rulings on the evidence and that its comments and rulings were not evidence. The implication was that the jurors should not interpret the trial court's rulings as favoring one side or the other or as a personal opinion on the evidence. As such, the instructions tended to mitigate any prejudice that the trial court's prior comments and rulings may have caused. And because the trial court did not display a deep-seated antagonism that would make fair judgment impossible, habeas relief is not warranted on Mason's claim regarding the trial court's conduct.

## E.  The Prosecutor's Conduct

Mason alleges next that the prosecutor erred by (1) eliciting testimony from the officer in charge of the case that Dennis had no prior record and (2) vouching for Dennis's credibility during closing arguments.

"Claims of prosecutorial misconduct are reviewed deferentially" in a habeas corpus proceeding. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The relevant question is whether the prosecutor's conduct infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*,

20

416 U.S. 637 (1974)).  "In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard."  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).  "[T]he standard for determining whether habeas relief must be granted is whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### 1.  Dennis's Lack of a Criminal Record

Mason alleges that the prosecutor erred reversibly by eliciting testimony that Dennis had no prior record.  This allegation is not entirely accurate.  Sergeant William Anderson testified in response to the prosecutor's question that Dennis had a prior conviction for possession of a stolen vehicle.  Anderson went on to say that Dennis had no prior conviction for armed robbery or anything similar.  (3/24/08 Trial Tr. at 33-34, ECF No. 7-7, Pg ID 643-44.)

Mason contends that the prosecutor's question and Sergeant Anderson's answer about Dennis's lack of an armed robbery conviction were improper because Sergeant Anderson's testimony bolstered Dennis's credibility in a case that hinged on whether the jury believed Dennis.  During opening statements, however, Jackson's attorney described Dennis as "a thug, a thief, and a robber"  (3/19/08 Trial Tr. at 88-89, ECF No. 7-5, Pg ID 323-24), and Hickey's attorney called Dennis the "stick-up man" (*id.* at 95, ECF No. 7-5, Pg ID 329.)  The Michigan Court of Appeals therefore determined on review of Mason's claim that the trial court did not abuse its discretion in allowing Sergeant Anderson to testify that Dennis did not have a prior conviction for robbery.

21

The Court of Appeals stated that the testimony was responsive to an issue raised by defense counsel during opening statements.  Because the testimony was admissible, the prosecutor did not err in eliciting it.

### 2. Vouching

Mason asserts that the prosecutor bolstered Dennis's credibility and vouched for Dennis during her closing arguments when she stated that Dennis was "completely consistent."  (3/24/08 Trial Tr. at 101, 103, ECF No. 7-7, Pg ID 711, 713.)  "Improper vouching occurs when a prosecutor either (1) bluntly states a personal belief in a witness's credibility, 'thereby placing the prestige of the office of the [prosecutor] behind that witness,' or (2) 'implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury.' "  *United States v. Henry*, 545 F.3d 367, 378-79 (6th Cir. 2008) (quoting *United States v. Francis*, 170 F.3d 546, 550-51 (6th Cir. 1999)).

Here, the prosecutor obviously was trying to attack a defense theory that Dennis was not credible because his version of the facts changed at various times after the shootings.  The prosecutor's argument – that Dennis's story was consistent – was not improper because the prosecutor did not suggest that she possessed corroborative evidence which she withheld from the jurors or that she had special knowledge of Dennis's credibility.  *United States v. Garcia*, 758 F.3d 714, 723 (6th Cir.), *cert. denied*, 135 S. Ct. 498 (2014).  She "spoke instead as an advocate seeking to restore, through argument rather than h[er] own personal assurance, the credibility of h[er] chief witness. That is a permissible prosecutorial function."  *Id.*

The prosecutor's comments that Dennis "told the truth" at one of the preliminary examinations in the case and that his words had been put to the test and were true, *see* 3/24/08 Trial Tr. at 102, 104, ECF No. 7-7, Pg ID 712, 714, are more troubling. But she also said that Dennis had no reason to lie about who shot Peterson and him. (*Id.* at 105, ECF No. 7-7, Pg ID 715.) Arguing that prosecution witnesses are credible because their testimony was consistent or because they had no reason to lie is not improper if the prosecutor did not imply that she personally believed the witnesses or that she knew of evidence which demonstrated the witnesses' truthfulness, but was not before the jury. *United States v. Jackson*, 473 F.3d 660, 672 (6th Cir. 2007).

The Sixth Circuit's "cases have found improper vouching only where the disputed remark put the spotlight on the prosecutor—the prosecutor's personal beliefs, the prestige of her office, . . . , her unique knowledge of the facts, etc." *Garcia*, 758 F.3d at 724. Measured against that standard, the prosecutor's comments at the close of Mason's trial were permissible because she did not express her personal belief in Dennis, nor rely on the prestige of her office or any unique knowledge of the facts. In fact, she encouraged the jurors to judge for themselves whether Dennis was telling the truth. (3/24/08 Trial Tr. at 102, ECF No. 7-7, Pg ID 102.) The Court therefore rejects Mason's claim that the prosecutor engaged in impermissible vouching.

### 3. Misrepresenting the Facts

Petitioner's final argument about the prosecutor is that she misrepresented the facts in her closing argument when she stated that (1) Dennis said he saw Mason shoot

23

Peterson and (2) Dennis told the responding officers that Mason and Jackson were shooting at Peterson.  (3/24/08 Trial Tr. at 102, 104, ECF No. 7-7, Pg ID 712, 714.)

Prosecutors may not misrepresent the facts in evidence, "because doing so 'may profoundly impress a jury and may have a significant impact on the jury's deliberations.' " *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (quoting *DeChristoforo*, 416 U.S. at 646).  Here, however, Dennis did testify at one point during the trial that he saw the defendants shooting.  (3/20/08 Trial Tr. at 68, ECF No. 7-6, Pg ID 497-98.)  Dennis also maintained that he told the responding officers that Mason and Jackson were involved in the shootings.  ( 3/19/08 Trial Tr. at 200-03, ECF No. 7-5, Pg ID at 426-29; 3/20/08 Trial Tr. at 44, ECF No. 7-6, Pg ID 476).  The Court therefore concludes that the prosecutor did not misrepresent the facts.

Even if the prosecutor erred, the trial court instructed the jurors that they were the fact finders and that the attorneys' closing arguments were not evidence.  The court also charged the jurors to focus on the testimony and to ignore any argument that was not supported by the evidence.  (8/25/08 Trial Tr. at 4, 11, ECF No. 7-8 Pg ID 789, 796.)  "[J]uries are presumed to follow their instructions." *Richardson v. Marsh*,  481 U.S. 200, 211 (1987).  Therefore, the prosecutor's comments, even if inaccurate, could not have had a "substantial and injurious effect or influence" on the jury's verdict, and were harmless. *Brecht*, 507 U.S. at 623.

In conclusion, the Court finds that the prosecutor's questions, statements, and arguments were not so unfair as to deprive Mason of due process.   Even if

constitutional error occurred, the errors were harmless.  The Court therefore declines to grant relief on Mason's prosecutorial-misconduct claim.

## F.  Appellate Counsel

In his sixth and final claim, Mason alleges that his appellate attorney was ineffective for failing to raise his claims on direct appeal.  Mason admits that the two claims appellate counsel raised on direct appeal had some legal merit, but he contends that his current claims have more merit.  The trial court concluded on review of this claim that Mason was not prejudiced by appellate counsel's omissions because none of the omitted issues had merit and because appellate counsel made a strategic decision not to pursue certain claims.

The Supreme Court has said that an appellate attorney is not required to raise every non-frivolous claim requested by his or her client if counsel decides, as a matter of professional judgment, not to raise the claim.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  In fact, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being a sign of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quotation marks omitted).  To demonstrate that appellate counsel was ineffective, a habeas petitioner must (1) show that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) demonstrate a reasonable probability that he would have prevailed on appeal were it not for his appellate attorney's failure to raise the issue.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

25

The Court has determined for the reasons given above that Mason's claims lack merit.  As a result, appellate counsel's failure to raise the claims did not amount to deficient performance, and the deficient performance did not prejudice Mason because there is not a reasonable probability that the result of the appeal would have been different had counsel raised all of Mason's claims.

The state trial court's conclusion – that appellate counsel was not ineffective – was objectively reasonable.  Therefore, habeas relief is not warranted on Mason's claim about appellate counsel.

## IV.  Conclusion

For all the reasons given above, the state courts' decisions rejecting Mason's claims were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable applications of the facts.  The state court's decisions certainly were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.  The Court therefore denies the petition for writ of habeas corpus.

## V.  Certificate of Appealability; Leave to Appeal *In Forma Pauperis*

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented

26

are adequate to deserve encouragement to proceed further."  *Miller-El  v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.*"  Slack*, 529 U.S. at 484.

Reasonable jurists could debate the Court's assessment of Mason's claim about the trial court's allegedly intemperate and unjust conduct.  The Court therefore grants a certificate of appealability on claim four.  The Court declines to issue a certificate of appealability on the remaining claims because those issues do not deserve encouragement to proceed further.  Petitioner may proceed *in forma pauperis* on appeal if he appeals this decision, because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

s/ Nancy G. Edmunds        
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated: July 7, 2016

27